We'll call the next case, 24-1371, again, at least on my sheet, Packard v. City and County of Denver. Good morning, may it please the Court. Can I ask you a quick question? Just like our presenting judge said on their sheet, it says it's called Packard v. City of Denver. But I thought on the briefs it said Epps v. Christian, but what happened to the name there?  Jonathan Christian is the defendant appellant in the second appeal. I want you to be so brief because I don't want to take you, this is non-substantive. Is the case properly named Packard v. City of Denver at this time? It's within the Packard v. City of Denver case. It's related to the case you just heard, Your Honor. Mr. Christian. I know that, but is the name of the case Epps v. Christian? So, yes, it is. All right, go ahead. Go to your substance. That's all I need right now. We'll figure it out. May it please the Court, I'm Andrew Rangel. I represent defendant appellant Jonathan Christian. Officer Christian was an individual police officer and an individual defendant in the trial that you just heard about. What I would like to focus on for my argument, I'm happy to answer questions about any of the other arguments raised in the briefs, is the clearly established prong of the qualified immunity analysis. And the context, which I think it's important for this Court to understand the argument that we're making, is the need for particularized articulation of the constitutional right at issue and an analysis of the specific facts that are involved in this case and a comparison of those specific facts against the facts of the cases that purportedly create clearly established. Okay, so you would be helpful for me is for you to distinguish your case from Packard v. Voudage? So Packard is totally inapplicable, Your Honor, and the reason why it's totally inapplicable is both the Supreme Court in this case have held in a series of cases that you have to look at the precedent that exists at the time that the event occurred and the Packard precedent from this court is a 2023 decision. The events involving Officer Christian are May 29th of 2020. Yeah, but Packard relied upon past cases like Fogarty and Buck that would have provided notice that there was about the clearly established right. So it's the reasoning of Packard is how I understand the plaintiff is arguing that applies here. And I'm happy to discuss Fogarty and Buck because I agree that those are the two central cases and those are the only two that the District Court relied upon and I don't think that those cases create clearly established law here. Why not? Let me let me give you one context that I think is important and then I will answer that question if I may, Judge Federico. The context that I wanted to provide this court is in five cases the United States Supreme Court has emphasized the the particularized nature of it. In those five cases including two from this court, they grant certiorari and issue unanimous procurium decisions saying Court of Appeals, you got it wrong. You're not doing this particularized analysis for analyzing the the qualified immunity clearly established inquiry. They also in a series of cases say in the Fourth Amendment excessive force context in particular, that's something that the courts have to do. That's the failure of the District Court and why Fogarty and Buck don't apply. Let me explain, Your Honor, so that you can understand what my argument is. The issue in Fogarty and Buck and why they're not applicable is the following analysis. What the District Court did in this case was analyze what the court perceived the holdings of Fogarty and Buck were. That's not the right analysis. What the right analysis is is looking at the specific facts of Fogarty, the specific facts of Buck, and comparing those specific facts to the facts of Officer Christian's interaction with Ms. Epps. That's the correct analysis that needs to occur on the clearly established analysis. That didn't occur. When you do that, you get to a different result and you come to the conclusion in our view that this is not clearly established law from Fogarty and Buck. There are, in my judgment, some fairly critical factual differences between the facts involved in Fogarty and Buck and the facts involved in Officer Christian. What's an example? So, first of all, the overall context of the protest, the anti-Iraq protest in Albuquerque in 2003, there is no discussion in the case at all of any violence. There's no discussion of any sort of conflict. It's during the day. It's at one location. It isn't involving multiple locations, multiple days, multiple events. It also, the uses of force that were specifically involved in the information in Fogarty and Buck are very different than the single pepper ball that is at issue with Officer Christian. I went through, and in the opening brief, we you know, I thought it was important to quote Fogarty and Buck so this court would understand these are the facts that are available in Fogarty and Buck in comparison to the facts here. And when you look at the different plaintiffs that are involved in those two cases, I analyze it as there are two that have any sort of factual correlation potential within the, with Ms. Epps. And those are Ms. Chavez and Mr. Fogarty. And when you look at the uses of force on Mr. Ms. Chavez and Mr. Fogarty, they're very different than the single pepper ball that is used here. And I think that's a clear distinction. The other clear distinction, Your Honor, is what Officer Christian testified to was his intent. What he, you know, this court can can conclude that his intent may have been misguided and he shouldn't have done what he did in that circumstances. And I respect that conclusion if that's what this court is, but that's not what the clearly established analysis needs to be. The clearly established analysis needs to be he was attempting to do an area of saturation with one pepper ball to discourage Ms. Epps from doing what she was doing in crossing in the middle of the street and coming toward the Capitol where the gang unit that Officer Christian was participating with had just cleared the Capitol in a violent chaotic situation involving a nighttime protest that was specifically directed against the police. And those are different... Had he given her a direct command to stop before he fired the shot? The evidence does not suggest that, Your Honor. All right. Okay, so it was fire first and explain later. Yes, and that may be wrong, Your Honor, but the issue that I'm raising is not whether it was a constitutional violation. The issue I'm raising in this argument today is clearly established. Yeah, but but that fact may help us discuss how relevant prior precedent is on whether that was clearly established or not. I agree, Your Honor, and the analogy that I would draw to get the court thinking about other issues and the implications of the determination that Fogarty and Buck, you know, so capture the day, if you will. The problem is the district court's analysis in this case essentially is a holding that if there's a protester that's not engaged in active aggression and it's just peaceful protest, no matter the context of which it exists, and you use less lethal force, you don't get qualified immunity. The problem with that is, as this court well knows, in deadly force cases, in takedown cases, in taser cases, in handcuffing cases, and all of the different avenues in which there is an analysis related to clearly established law, there's many more fine gradations that are done than the general notion that you can't use less lethal force on a protester that's not engaged in violent or disruptive activity in the context of a protest. And that's fundamentally the problem. That's the lesson of the Supreme Court's cases. You have to be particularized and you have to be specific, particularly when you're talking about the Fourth Amendment. Can I ask you about the first problem, qualified immunity? I thought I just heard you said you're not challenging a rights violation. Did you say you don't need to emphasize that year-to-date argument? No, I'm not giving that argument up.  that's what, so help me understand the standard review on that, because parties don't seem to agree about what evidence the district court should have considered in regards to whether or not there was a rights violation. So the case that the plaintiff relies upon in their brief is a case called, let me find it, Marshall. Yes, is the Marshall case. And the Marshall case is inapplicable because in Marshall there was not a Rule 50A motion. And so the this court had a different analysis of what the standard of review was. In our case, qualified immunity was raised at the Rule 50A stage at the close of the plaintiff's evidence. So it wasn't just a summary judgment ruling. I raised qualified immunity on behalf of Mr. Officer Christian on summary judgment at the mid-trial Rule 50A motion. So at what point are you suggesting the review of the evidence should stop? In other words, help me understand, if you say Marshall's in a posit, then what did the district court do wrong in terms of the evidence it considered for a rights violation? Its analysis was incomplete and imprecise is how I would say it, Your Honor. When a court in the summary kind of judgment context, the court is required to state the evidence upon which they're making a determination on qualified immunity for the clearly established prong and also for the violation prong. This case is a little different because it's not a summary judgment. You know, I believe the district court should have articulated the facts on which he was relying to make the determinations at Rule 50. But what he did, and understandably so, is reference back to his summary judgment ruling, and I understand that. But the issue of the facts is, what are the facts that exist that demonstrate that there's a violation of the Fourth Amendment? This court is at a little disadvantage because resolving, reviewing a qualified immunity determination at trial is a little different than reviewing it on a summary judgment. Understandable. The other circuits that we cite in this context say you should apply the same analysis and Marshall, in my view, doesn't apply because of the Rule 50a issue. So what I would say is the court needs to focus, as we argue in our brief, on the totality of the circumstances that exist. And GRAM and its three factors, in my view, are a blunt instrument in this case because it's a slightly different context. If you look at the totality of the circumstances, the question is, was Officer Christian's actions reasonable from the perspective of the objective, reasonable analysis of an officer? I'd like to reserve the remainder of my time, if I would. Okay. Thank you, counsel. Thank you.  May it please the court. Your Honors, I can't put it better than Judge Ebell that this was fire first, direct later. At trial, the jury saw uncontroverted video evidence of Officer Christian taking a knee, aiming, and shooting Ms. Epps with a pepper ball while she was filming the police and documenting the protests. After seeing that video evidence and hearing the witness testimony, the jury issued a mixed verdict, first finding that Officer Christian had used excessive force in violating Ms. Epps' Fourth Amendment rights. Is it clear that he didn't give a warning before the firing, or is that ambiguous? It is absolutely clear, Your Honor. In fact, what happened was Officer Christian fired the shot, then he yells, get out of the street, and right after he yells that, another officer walks over to him and says, Sarge said don't hit her. So there was no warning given before he fired that shot. There is a recording of that whole event. Yes, Your Honor. And the recording shows that he did not say stop or I'll fire. Exactly, Your Honor. There was no warning given. I mean, she was shot without any warning. Is there a lapel video? Of the officer? Yes, there's a body-worn camera footage. There's actually two videos, Your Honor. There's the body-worn camera footage of Officer Christian, where you can see him kneeling, aiming, and firing. There's also the cell phone footage of Ms. Epps because she was filming the police. That's why she was there, to exercise her constitutional rights, to document that. She was live-streaming the protests and raising awareness about the issues surrounding the protests. Okay, I'm just trying to drill down on whether there was a warning or not, whether your position is that there most certainly was no warning, or you can't tell from the evidence if there was a warning or not. Sounds like it's number one, not number two. It's number one, Your Honor, and that wasn't even contested at trial. The sequence of events were very clear. Okay. And on the clearly established law prongs, Your Honor, Packard controls here. This feels a little bit like deja vu. This court decided a similar issue two years ago involving one of Ms. Epps' co-plaintiffs, Mr. Packard, where he was shot without warning and sustained severe injuries. And in that case, the core issue was whether or not the law had been clearly established in the protest context. And I think just to make this really clear... In this exact same protest? Yes, that case in 2023, the Packard decision involves this protest context of the Black Lives Matter protests. And so when they said clearly established, they, meaning we, held that the law was clearly established at the time of the protest. Yeah, in fact, it's actually crystal clear in the Court's opinion. This is a quote from this Court on page 870 of that decision. By May of 2020, when the incidents here occurred, it had been clearly established for at least 12 years that the deployment of less lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force. And to my friend's point, we didn't cite Packard for the idea that Packard is clearly established law. We cited Packard for this idea that this Court has already done the hard work of figuring out how do Fogarty and Buck apply in this context. And I want to just make it crystal clear how... What about the idea? I think what he's getting at is that he would say that the facts of that particular force incident would be different than this one. Maybe one pepper ball versus more force on Mr. Packard. Two responses on that, Your Honor. First, the facts of this case fit much more closely to Fogarty and Buck than the facts that didn't Packard. And let me tell you why. This is a sentence from Fogarty. It says that the harm that he was claiming was, quote, by shooting him with a pepper ball or some other type of projectile. The exact harm that was at issue in Fogarty is what happened here. So to say that you need... First of all, this idea that, you know, the qualified immunity test is a scavenger hunt for the exact same type of case. This Court has rejected that idea on multiple occasions. But even if you needed something directly on point, you have it in Fogarty. That's exactly what the facts were issued in Fogarty. And also to the point of the factual distinction that my friend made about the facts of those cases, the idea that there was no violence in those protests related to the Iraq war is just wrong. And I invite you to read in the background sections of both Fogarty and Buck. In fact, the plaintiffs describe the defendant officers in that case described the hostile nature of the crowd, that there was rioting, that there was violence. It was the exact same type of defense that Denver sought to make here. So there's just not really any factual differences between the two and to the extent they are, they're immaterial. And if I could just address briefly the the point about that Officer Christian was attempting to use an area saturation method. What we heard there was essentially a re-arguing of their closing statement. The jury heard Officer Christian's argument that he was not trying to shoot her, that he was trying to shoot the ground and use this area saturation method. The jury heard that evidence, they heard Ms. Epps' competing testimony in the video evidence, and they rejected Officer Christian's version of events. They saw the massive bruise on Ms. Epps' leg from when she was shot. They heard her testimony about this and they disagreed with that. And the reason that matters is because of the court's discussion with my friend about Marshall. And I want to clear some underbrush here. So Marshall is actually very clear. The Rule 50A issue is a red herring. So what the court said on the Rule 50A issue actually is, yes, it's a problem. In that case, the defendant officer did not remake the qualified immunity argument in Rule 50A. Typically when you don't make that argument in the Rule 50A, you're then waived for making it on a Rule 50B. But in that instance, on appeal, the defendant officer didn't raise that argument of the problem between the 50A and 50B. And so what this court said is, that issue is waived, so let's talk about Rule 50B. And in the Rule 50B standard, this court made clear that it is different reviewing qualified immunity after a trial than on, for example, summary judgment, and that you have to look at the evidence in the light most favorable to the plaintiff, or excuse me, to the facts the jury found. And that just makes sense. That's how this court always does it when you're coming up on review after a trial. You're going to give deference to the jury and the work that they did. And actually, even if you look at the cases that they cite on the out-of-circuit cases that they say you should apply, unsurprisingly, those cases actually align directly with Marshall. So I have a whole list of them here. I'll just give you one of the cases that they cite. It was the Ninth Circuit case, the city of Los Banos. It says in evaluating, or were you... Give the citation. Oh, yes, sir. This is 976 F. 3rd. 986. And this is cited in their brief, and this is what that court said. In evaluating a renewed qualified immunity motion under Rule 50B after a jury trial, we analyze the motion based on the facts established at trial, viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in favor of the non-moving party. So, and again, I could go through their list of cases. They all say something along those lines that, look, when you're after a verdict, you're on Rule 50B, it's a different standard of review and qualified immunity, and again, that makes sense. Does it matter in this case? Do you win under either standard? Yes, Your Honor. We win under either standard. The evidence here was clear. This was not a close case, and the evidence was clear of Mr. Officer Christian shooting Ms. Epps without any justification. I'm happy to answer any questions on any of the issues that were raised by the parties. Otherwise, I'm happy to see my time and rest on our arguments in our brief. Well, we don't want to waste six minutes. Let's, why don't, why don't you tell us a little bit about your punitive, about the punitive damages issue? Yes, Your Honor. So on the punitive damages, there was a wealth of evidence from which the jury could conclude that Officer Christian had a callous indifference to Ms. Epps' constitutional rights. The first is the video evidence of the shooting itself. There was no justified reason for Officer Christian to shoot her, and from that evidence, and on page 64 of volume 22 of the record, Officer Christian testified that pepper bowls are used for pain compliance. Those are his words, pain compliance. And so an officer shooting somebody for pain compliance without giving a warning, and for no reason, a reasonable jury could conclude, as this one did, that he had a callous indifference for constitutional rights. But that video evidence wasn't all they saw. Some of the most vivid evidence was related to his statements that, during the protest, there was an instance where he was talking with another officer, and they were out of munitions they needed to refill. And one of the officers said, yeah, we need to refill. I like shooting people. Officer Christian... This was not him that said that. Somebody else said that. Somebody else said that, and right, and shortly thereafter, Officer Christian's response was, editing for the court, F yeah. So while it wasn't his statement, he obviously agreed with that. And that, you know, normally finding evidence on bad intent, it's really hard to do. You have to infer it typically. Did it immediately follow the statement, I like shooting people? F yeah. About three seconds. There was an intervening, he said something to the effect of all that reasonable force, and then he said F yeah. Close enough in time that a reasonable jury could take it to be a response to the statement. Absolutely. Okay. And the jury saw other evidence as well of Officer Christian's acts toward protesters that showed this callous indifference. So there was a video they saw. This is exhibit 739 is the key exhibit for this video evidence that the jury saw. He was riding on an RDV, one of these vehicles that the Denver Police Department has. While the vehicle is moving, you can see there's a group of protesters with their hands up, and Officer Christian starts shooting at them. They're in front of the Denver Public Library. Just starts shooting at them, again, without provocation. Thirteen minutes later, Officer Christian comes across a woman carrying a sign, walking up onto a sidewalk, unprovoked. He pepper sprays her in the face and says, get the F out of here. Then right after that, there's somebody filming him with their phone. He pepper sprays them in the face. So there was a series of events, and if you look at exhibit 739 and you see the evidence as it came into the jury, it's easy to see why they would conclude that this was... Did that come in as other bad acts or as race justice? So there was an objection made below on 404B on other bad acts, Your Honor. And if Officer Christian had raised that argument in his opening brief, you would have already heard my response to this. But this was objected to below, and Judge Jackson, a veteran of the bench, overruled the 404B objection because he found that these events went specifically to motive and intent. And that's page 89 of the record of volume 22. And again, that's really how this came up. So this came in under the other evidence rule? That's right, Your Honor. Well, because it went to motive and intent. Yeah. And so this Court has regularly held in the context of where you have to find subject of intent, that's one of the classic exceptions that you're allowed to introduce evidence of other acts. And so one decision I can point you to is the San Juan decision. This is 160 F. 3rd, 1291. And that's this Court's decision where it upheld other acts in this context where you need to... where there needs to be a showing of subject of intent. And so this was addressed below, and Officer Christian didn't raise this in his appeal. He did not... He hasn't appealed from that ruling on the 404B ruling that Judge Jackson made. So we think even if that objection had been appealed, we would win on that because it's clear that when you have to look at subject of intent, you can look at those. But in any event, that's been waived or at least forfeited because it wasn't raised in his opening brief or in their reply. Can I ask you about the bifurcation argument as well? Yes. Just help me for context. Were there other officers denied qualified immunity? There were other officers who were granted qualified immunity, Your Honor. Who were denied. In other words, his argument is his case should have been, as I understand it, some of the issues should have been tried separately from the city. But were there other officers also on trial as individual? No, Your Honor. So it was just Officer Christian? It was just Officer Christian. And the reason why that made sense here, Your Honor, obviously this is on the abuse of discretion standard. And bifurcation is a classic issue of discretion. Neither side has found any case where this Court or any other has ever reversed a decision. But here, the issues involved the same parties, the same facts, the same case. It didn't make sense to separate these out. And even if, even setting aside those potential concerns, there's two reasons why you don't have to worry about the bifurcation issue. The first is the jury instructions were extremely clear about this. So jury instruction number four, that's on page 146 of volume 11, said that there were two defendants in the case, City of Denver and Officer Christian, and that the jury had to, quote, consider them, each defendant separately, that they couldn't be considered together. And second, even if we had concerns about whether or not the jury filed those instructions, we know that they did because of the mixed verdict. The jury found against Denver on all of the claims, including for Ms. Epps, found against Denver on both the First Amendment and Fourth Amendment claims. They didn't find, for Ms. Epps, on both of the claims against Officer Christian. So as this court held in Garcia, when there's a mixed verdict like that, it can give you, quote, extra confidence that the jury followed the instructions. If there are no other questions, Your Honors, I'll cede my time. Thank you, Counsel. We have two minutes and 14 seconds left. Thank you, Your Honors. I'd like to, again, address the Packard case because I think that's an important issue. I would invite the court to look at the facts of Packard in addition to the facts of Fogarty and Buck. Because, again, what counsel is doing is what the district court did, which is focusing on the holding of Packard. But that's not the correct analysis. The correct analysis is what are the specific facts that lead to the conclusion that something's clearly established for qualified immunity purposes. Packard involved a beanbag shotgun that hit Mr. Packard and fractured his neck. That's a dramatically different use of force than what we have here. Well, that's just because of basically bad luck, where the beanbag hit him. If it had hit him in the shoulder or in the arm or something, it wouldn't have been nearly as dramatic. That may be true, but the use of force of a beanbag in the context of a protest is a very different use of force than a pepper ball. How do we know that? A beanbag could potentially have more momentum because it has more mass, but it would have less velocity. So maybe the total momentum of a beanbag impact would be the same as a pepper ball. We don't know that. Except that the mechanism of a beanbag in this context, Your Honor, and there is testimony in the trial, but it's not cited in any of the briefs. It's just based on my knowledge. The beanbag has sort of a shot in it, and so it has a much different mass and a much different potential impact. Right, but if it had more mass but less velocity, the total impact might be the same. We don't know any of that. The facts are completely different. I understand, but to me, what the court needs to evaluate is what are the facts involving the people in Buck and Fogarty, and if you look at them, there isn't a single pepper ball use of force for any of those plaintiffs. I mean, we can get down in the weeds on that, but a single pepper ball can be devastatingly harmful. I mean, what if it hits you directly in the eye? I mean, you could lose your eye on it. It could have every much as damaging force as a beanbag. I agree, Your Honor, but I think the court needs to look at the videos that are involved in Officer Christian and Ms. Epps' event, and understand that what Officer Christian was clearly trying to do was hit the ground by Ms. Epps' feet in an area of saturation manner. The district court, if you read the – So tell me this. I'm not aware of that, of officers hitting the ground in a saturation manner or whatever. How am I going to look at that? Is there going to be testimony in the record?  Look at how he was ducked down and pointing the weapon. So there is, and it's cited in the brief, and it's referenced in the brief. Officer Christian describes in his testimony what an area of saturation manner is. Essentially, Your Honor, briefly, it's letting the – it's using the pepper ball to hit the ground, and so it disperses the OC by the people. That's what area of saturation is. It's trying to saturate the area with OC so that the people don't want to be there any longer by retreating from the OC. Got it. Okay. We're out of time. Thank you, Counsel. Thank you, Your Honor. Okay. The case will be submitted, and Counselor –